THE FIRST NATIONAL BANK ·OF DUBUQUE, IOWA, Appellant, v. C. H. BOOTH.

**Acceptance:** AGREEMENT TO CANCEL: *Evidence.*   Defendant refused to make a third acceptance until he learned the state of his account with the drawer, and was furnished with a statement showing a balance of two thousand nine hundred dollars against him, after crediting him with two prior acceptances of one thousand dollars each.   Thereafter he agreed with plaintiff, who held the prior acceptances, that he would accept for two thousand five hundred dollars, "but not to exceed that," and before such acceptance was signed, he reminded plaintiff that he had the two prior acceptances, and in reply plaintiff stated that they would be "taken care of."   Plaintiff had previously permitted defendant to renew the prior acceptances, and one of them was about to fall due.   *Held,* insufficient to justify a finding that plaintiff agreed to cancel the two prior acceptances.

SAME:   *Contract construed.*   An agreement by a president of a bank with one who has just accepted a draft for two thousand five hundred dollars, payable to the bank, to see that two prior drafts for one thousand dollars each, which are not yet due, "are taken care of," is simply an agreement for further indulgence on such prior acceptance, and not an agreement that the new acceptance shall be applied to their payment.

**Evidence: CONCLUSIONS.** Evidence by the acceptor of a draft that certain facts left with him the impression that the president of the payee bank distinctly understood his original expression that he would become responsible not to exceed two thousand five hundred dollars on account of the maker of the draft, is inadmissible, as the witness' conclusion.

**Power of Bank President.** Where a president of a bank acted in its behalf in procuring an acceptance, declarations made by him in regard to the transaction after the acceptance was made, were not admissible against the bank, since, at the time they were made, the president's power to bind the bank had ceased.

*Appeal from Dubuque District Court.*—HON. J. L. HUSTED, Judge.

FRIDAY, MAY 21, 1897.

THIS is an action at law to recover upon defendant's acceptances of three drafts drawn upon him by the Novelty Iron Works, as follows: One dated September 1, 1893, for one thousand dollars, payable to the plaintiff four months after date, indorsed, "Accepted. C. H. Booth;" and further indorsed, "Demand, notice and protest waived. Jan. 4, 1894. C. H. Booth." One dated October 6, 1893, for one thousand dollars, payable to plaintiff six months after date, indorsed, "Accepted. C. H. Booth;" and further indorsed, "Demand, notice, and protest waived. C. H. Booth." One dated December 28, 1893, for two thousand five hundred dollars, payable to the order of the Novelty Iron Works four months after date, indorsed, "Accepted. C. H. Booth;" and further indorsed, "For value received, I hereby guarantee payment of the within note, and waive demand and notice of protest on same when due. Novelty Iron Works, G. E. Davis, Secy. and Treas." This draft, about the date of defendant's acceptance and before maturity, was sold and transferred by the Novelty Iron Works to the plaintiff. The only defense set up in the answer is as

follows: "Defendant, for answer to the petition herein, alleges that the third acceptance mentioned therein was executed by the defendant directly to the plaintiff, and not to the Novelty Iron Works, and that the same was and is without any other consideration than an oral agreement, understanding or condition by plaintiff with defendant, as the inducement thereto and only consideration thereof, that the same should be applied to the payment or cancellation of the first two acceptances mentioned in said petition, and that the surplus or excess not required therefor should be used to secure other liabilities then existing, or represented by plaintiff to exist, in plaintiff's favor, and against said Novelty Iron Works." The same matters are pleaded in the answer by way of counter-claim. Wherefore defendant prays for the cancellation and surrender of the first two acceptances. The case was tried to the court, and judgment rendered in favor of the plaintiff on said two thousand five hundred dollar acceptance, and in favor of the defendant on the other two acceptances. Plaintiff appeals.—*Reversed.*

*Powers, Lacy & Brown* for appellant.

*Henderson, Hurd & Kiesel* for appellee.

GIVEN, J.—I.    But for the matter set up as defense the plaintiff would be entitled to judgment on all three of the acceptances upon the pleadings, and the inquiry was whether the defendant had established his defense of an agreement as alleged. The burden is upon him to establish this agreement, and this he claims to have done by the testimony of himself and of Miss Fannie Couch, considered in the light of the undisputed facts. Appellant contends that taking this testimony as true, and applying it in the

light of the undisputed facts, it fails to furnish a sufficient basis for the judgment rendered. In pursuing this inquiry, we recognize the fact that this case is not before us for trial *de novo*, and also the well-established rule that the finding of the lower court has the force and effect of a verdict, and will not be interfered with by this court when there is sufficient evidence tending to sustain it, even though the evidence is conflicting. While we will not review the finding of the court or jury upon conflicting evidence, we will inquire whether there is any evidence to support the judgment. In other words, if the defendant has failed to introduce evidence fairly tending to establish the alleged agreement, the judgment is without support, and should be set aside; but if he has introduced such evidence, it must stand, even though the plaintiff has introduced evidence in conflict therewith. Our inquiry is not to reconcile conflicting evidence, nor to say which side of the conflict should prevail, but, taking the evidence introduced by the defendant as true and uncontroverted, we are to say whether, considered in connection with the undisputed facts, it establishes his only defense, the alleged agreement. We will here note the undisputed facts necessary to be noticed, and then turn to the evidence introduced by the defendant to support his defenses. The plaintiff, the defendant, and the Novelty Iron Works are all residents of and doing business in the city of Dubuque. The defendant and Mr. C. H. Eighmey (president of the plaintiff bank) were both directors of the Novelty Iron Works. The defendant was a customer of, and had a large running account with, the iron works, and the iron works was a borrower at the plaintiff bank. On February 1, 1893, the bank discounted for the iron works its draft for two thousand dollars on the defendant, accepted by him, payable in four months. The two acceptances first mentioned

were given in renewal of this draft. The defendant was credited on his account with the iron works with the draft for two thousand dollars. In October, 1893, Mr. Eighmey inquired of defendant if he would accept another draft from the iron works, to which defendant replied that he wanted to see a statement of his account before doing so. About November 1, 1893, a statement of his account was given to the defendant by the secretary of the iron works, which statement showed a balance against him of two thousand nine hundred and sixty-nine dollars and fifty-seven cents. On the twenty-eighth day of December, 1893, Mr. Eighmey, in behalf of the bank, called upon the defendant at his office, and, after a brief interview, left, and returned in a short time, when they had a further interview, and the two thousand five hundred dollars acceptance was then executed. It is upon what occurred at those interviews that the defendant relies as establishing the alleged agreement. There is a conflict in the testimony of defendant, Miss Couch, and Mr. Eighmey as to what was said in those interviews, but it is not as to the conflict that we inquire, but simply whether the testimony adduced by the defendant, taken as true, establishes the alleged agreement. Concerning those interviews the defendant was asked: "Now, state what talk you then had with Mr. Eighmey, and give also what Mr. Eighmey said to you." He answered as follows: "Ans. Mr. Eighmey came into my office on the day, I presume, of the date of that draft, probably some time in the latter part of December, last year, and asked me how much I would become obligated for on account of the Novelty Iron Works. My reply was that at that time I would assume on account of the Novelty Iron Works the sum of $2,500, but not to exceed that. Mr. Eighmey left my office then, and in a short time, probably not exceeding fifteen or twenty

minutes, he returned to my office with a draft, I supposed it to be. I looked particularly at the amount of it, and not at the wording. The figures at the top I saw were for $2,500, and I accepted it. I put my name on the back of it. I made my signature so that I guess it can be understood. When he picked the draft up from the table, I reminded him that there were already two one thousand dollar drafts outstanding and unpaid, which I presumed he held (which turned out to be the fact); and he remarked, as he left the office with the draft, 'I will see that these drafts are taken care of.' I think this the very language he used to me. That left me with the impression that he distinctly understood my original expression to him, when I said I would become responsible not to exceed $2,500 on account of the Novelty Iron Works." He further testified that he never received any other consideration for the last acceptance than as stated, and that this last draft was not presented to him for acceptance by the iron works. His further testimony is as to a subsequent conversation with Mr. Eighmey, and in denial of what Mr. Eighmey testified was said in the interviews on the twenty-eighth. Miss Couch states: "That Mr. Eighmey came into the office and asked Gen. Booth how much he would become responsible for on account of the Novelty Iron Works, and the general said, 'I cannot become responsible for more than $2,500.' Mr. Eighmey, I think, then left the office, and in a short time came back with a note, and the general, I presume, signed it, or endorsed it; and the general said, 'You understand, Mr. Eighmey, you have two of my notes now for $1,000 each, and you will take care of these, will you?' and Mr. Eighmey said he would take care of them. I can't remember much." On further examination she said that she did not remember all that Mr. Eighmey

said. "I don't know as I can tell what Mr. Eighmey replied." In response to a question by the court, she answered: "I don't know as Mr. Eighmey said anything. He left the office after the general asked him to take care of the two other notes, and he was back in about ten minutes." Miss Couch was evidently somewhat confused by the examination, and we do not think that she intends to be understood as saying that Mr. Eighmey returned in about ten minutes after the general asked him to take care of the other two notes. It is manifest, according to her first statement and that of the defendant, that what was said about the other acceptances was in the last interview. The evidence relied upon as showing the agreement alleged may be summed up as follows: That when asked on December 28, 1893, how much he would accept on account of the Novelty Iron Works, the defendant replied: "I would assume on account of the Novelty Iron Works the sum of $2,500, but not to exceed that." That in the last interview, on the twenty-eighth, Mr. Eighmey, when reminded of the two former drafts, said: "I will see that these drafts are taken care of." Now, taking this evidence as true and uncontradicted, does it tend to establish the alleged agreement? What did the defendant mean, and what did Mr. Eighmey have reason to understand him as meaning, when he said he would accept "for $2,500, but not to exceed that"? They both knew that defendant had refused to make this third acceptance until he knew the state of his account; that he had been furnished with a statement which showed him credited with the prior acceptances, and a balance against him of two thousand, nine hundred and sixty-nine dollars and fifty-seven cents; and they knew that said prior acceptances were in the hands of the plaintiff and not yet due. With this knowledge, it seems to us entirely clear, that

the defendant could not have been understood as meaning otherwise than that he would not accept to a greater amount than two thousand five hundred dollars, because of his then indebtedness on the account. If it was agreed that this acceptance was to be the total of defendant's liability on acceptances, why was not this one taken for five hundred dollars, or the others surrendered, and why is it that on January 4, 1894, after the last draft was accepted, the defendant indorsed the first, waiving notice and protest? It seems to us that the statement of the defendant that he would assume "$2,500, but not to exceed that," does not tend, in the least degree, to show that this last acceptance was to be applied to the payment or cancellation of the former. According to the testimony of the defendant, and of Miss Couch in her first statement, it was not until after the acceptance of the two thousand five hundred dollar draft had been signed, and the draft picked up by Mr. Eighmey, that the defendant reminded him of the other drafts, and that he said, "I will see that these drafts are taken care of." If this was the order of events, then, surely, the statement of Mr. Eighmey formed no inducement or consideration to the execution of the acceptance, and does not in the least tend to establish the alleged agreement. Assume, however, that it was before the acceptance was signed that the defendant called Mr. Eighmey's attention to the other drafts, and that Mr. Eighmey said that he would see that they were taken care of, still it does not seem to us to tend to show shch agreement. According to the testimony, the defendant merely reminded him of them, and asked nothing with respect to them. When it is remembered that the bank had permitted the defendant to give the two prior drafts in renewal of a former one, and that these prior drafts were soon to fall due, it seems to us clear, that Mr. Eighmey's

answer was with reference to further indulgences to the defendant, and cannot be construed as meaning that those drafts were to be canceled. We do not discern any theory upon which the evidence of the defendant and Miss Couch can be held, under the undisputed facts, to tend to show the agreement alleged in the answer.

II.    Appellant complains of certain rulings of the court in admitting and rejecting testimony. Appellee in his deposition, in answer to interrogatory twenty, said, in relation to the interviews of December 28, 1893: "That left me with the impression that he distinctly understood my original expression to him, when I said I would become responsible not to exceed two thousand five hundred dollars on account of the Novelty Iron Works." This was clearly a statement of the witness' conclusion, and not of a fact. It was for the jury, not the witness, to say what conclusion should be drawn from what was said and done. Appellee relies upon *Stoughtenburgh v. Dow*, 82 Iowa, 180, as sustaining this ruling. In that case a material issue was whether certain machinery was defective, and the witness stated that he had made complaint about it to the head miller, and that he gave witness to understand that he would remedy it as soon as he had time. This was held admissable, as tending to show an admission of the defect, but not to establish an agreement, as in this case. We think this evidence should be excluded. Appellee testified to certain conversations about the transaction had with Mr. Eighmey after it was completed. Mr. Eighmey acted for the bank in procuring the acceptance, and when that was completed, his power to bind the bank ceased, and therefore his subsequent declarations were not admissible. The same is true as to a certain letter that was admitted in evidence. This evidence was

not offered for purposes of contradiction. Appellant offered in evidence the statement of the account of appellee with the Novelty Iron Works that had been furnished to appellee at his request. This was excluded on appellee's objection. We think it should have been admitted, but we would not reverse upon this ground alone, as all the material facts shown therein otherwise appear beyond dispute. For reasons stated, the judgment of the district court is REVERSED.